UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GLOBAL STERILIZATION AND FUMIGATION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ADMIRAL INSURANCE COMPANY<br><br>Defendants. | Case No. 3:20-cv-00444-LRH-CSD<br><br>ORDER |

Before the Court are Defendant Admiral Insurance Company's ("Admiral") motion for summary judgment (ECF No. 17) and Plaintiff Global Sterilization and Fumigation, Inc.'s ("Global") partial motion for summary judgment (ECF No. 20). For the reasons articulated below, the Court grants Admiral's motion for summary judgment in part.

**I.     BACKGROUND**

Global "performs industrial sterilization, fumigation, and pasteurization of, among other things, food products." ECF No. 18 at 3. Admiral insured Global's business under a Commercial General Liability ("CGL") insurance policy from June 4, 2017, to June 4, 2018, and under another CGL policy from June 4, 2018, and June 4, 2019 (collectively "policy"). ECF No. 17-7 at 2. The policies contain the same pertinent provisions and require Admiral to "pay those sums that [Global] becomes legally obligated to pay as damages because of 'bodily injury' or 'property' damage to which [the] insurance applies." ECF No. 17-8 at 10. In addition, Admiral is required to defend Global against any suit seeking those damages. ECF No. 17-8 at 10.

In 2017, Global was sued by Brandstorm, Inc. ("Brandstorm"), who had hired Global to pasteurize its chia and hemp seeds and prepare them for shipment to its customers. Global allegedly

damaged the seeds and the bags they were contained in when it performed the work. Brandstorm sued Global, alleging causes of actions for breach of contract, fraud, negligent misrepresentation, negligence, unjust enrichment, and quantum meruit. ECF No. 17-3.

After being sued, Global notified Admiral and wanted Admiral to defend it in the *Brandstorm* action. Admiral refused to do so because it concluded that no potential for liability coverage existed under the policy. ECF No. 18-2. Consequently, Global initiated this lawsuit against Admiral alleging breach of contract, tortious breach of good faith and fair dealing, and violations of Nev. Rev. Stat. § 686A.310. ECF No. 1 at 6–12.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a motion for summary judgment, a court reads the evidence and all reasonably drawn inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). If a movant satisfies its burden of showing that it is entitled to summary judgment under this standard, the nonmoving party must point to facts supported by the record that show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).

## III.   DISCUSSION

Admiral claims that it had no duty to defend Global in the *Brandstorm* action because there was not an occurrence and even if there was, the policy terms excluded it from coverage. Admiral also claims that if there was no duty to defend, then it is entitled to summary judgment on Global's bad faith and statutory liability claims. In Global's partial motion for summary judgment, it sought summary judgment on only the duty to defend claim. Both parties acknowledged that their motions for summary judgment sought judgment on the same issue and that these motions should be considered together. After reviewing the parties' motions, the Court finds that Admiral is entitled to partial summary judgment.

///

### A. Judicial Notice

In conjunction with its motion for summary judgment, Admiral filed a request for judicial notice of the following documents from the *Brandstorm* case: the (1) complaint; (2) first amended complaint; (3) second amended complaint; and (4) order dismissing claims. Global does not oppose this request. The Court will take judicial notice of the documents because they are matters of public record whose accuracy can be readily determined. Fed. R. Evid. 201(b)(2); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998). Accordingly, the Court grants the request for judicial notice with the limitation that the judicially noticed fact in each instance is the existence of the document, not the truth of the matters asserted in the documents. *See Rowland v. Paris Las Vegas*, No. 3:13-CV-02630, 2014 U.S. Dist. LEXIS 24718, at *3 (S.D. Cal. Feb. 25, 2014).

### B. Duty to Defend

Under Nevada law, an insurer bears a duty to defend its insured when a potential for liability under the policy exists. *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). This broad duty arises when (1) "the allegations in the third party's complaint show that there is arguable or possible coverage" or (2) "when the insurer ascertains facts which give rise to the potential of liability under the policy." *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 687–88 (Nev. 2021) (quotations omitted). Courts must resolve doubts about whether the duty arises in favor of the insured to "prevent an insurer from evading its obligation to provide a defense . . . without at least investigating the facts behind a complaint." *United Nat'l*, 99 P.3d at 1158 However, this duty is not absolute. *Id.* "If neither the allegations of the complaint nor the facts known to the insurer show any possibility of coverage, then there is no duty to defend. In such a case, the insurance policy simply does not apply." *Access Med.*, 482 P.3d at 688.

Global's CGL policy applies when "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" and during the policy period. ECF No. 17-8 at 10. At issue here is whether Brandstorm's claims allege an occurrence that caused property damage. And if so, whether the policy excludes coverage.

///

The CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" but does not define "accident." ECF No. 17-8 at 13. In the absence of a definition for "accident," the Nevada Supreme Court defines it as "a happening that is not expected, foreseen, or intended." *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004) (en banc) (quotation omitted).

Global argues that *Catania v. State Farm Life Ins. Co.*, 598 P.2d 631 (Nev. 1979), and *Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d 1104 (D. Nev. 2007), govern the definition of "accident" here. Though *Catania* and *Sanders* analyze the term "accident," they do so in the context of life insurance and homeowner's insurance policies. The Court finds that Admiral identified a more persuasive and relevant line of case law, which interprets the term "accident" in CGL policies and the faulty workmanship context. Those cases hold that damages caused by faulty workmanship do not constitute an occurrence because the fortuity implied by reference to an accident is not what is commonly meant by a failure of workmanship. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897–98 (Pa. 2006); *see also Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2011); *Essex Ins. Co. v. Holder*, 261 S.W.3d 456, 459–60 (Ark. 2007).

For example, in *Big-D Construction Corp. v. Take It For Granite Too*, a court in this district analyzed whether the faulty installation of tiles and damage later caused by those tiles falling constituted an occurrence/accident under a CGL policy. 917 F. Supp. 2d 1096, 1107–08 (D. Nev. 2013). Finding no governing case law, the court predicted the Nevada Supreme Court would hold that the faulty installation of the tiles was not an accident but "the events of the tiles falling from the building were unexpected, unforeseen, and unintended, and [would come] within the plain, ordinary, and common meaning of an accident." *Id.* at 1108. The court reasoned that Nevada would likely follow the majority of courts which hold that faulty workmanship is not an accident because it is a foreseeable occurrence whereas the unexpected consequences of faulty workmanship are accidents within the meaning of a CGL policy. *Id.* Thus, *Big-D Construction* stands for the proposition that "an unexpected happening caused by faulty workmanship could be an occurrence." *Id.* This holding aligns with the rationale behind CGL policies: "Comprehensive

4

general liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business." *State Farm Fire & Cas. Co. v. Tillerson*, 777 N.E.2d 986, 991 (Ill. App. Ct. 2002).

The same can be said about the pasteurization process that Global provides. As the terms of the policy show, Global contracted for liability coverage for accidents causing bodily injury or property damage, not the normal business risks that come with providing pasteurization services to customers. If Global desired to have coverage for all claims regarding bodily injury or property damage, the policy would have been drafted broadly by omitting the need for an accident to trigger coverage and the business risk exclusions directed at eliminating coverage for damages that arise from Global's work or product. However, the policy, as drafted, cannot be construed to protect Global against the failure to properly pasteurize products because that would exceed the scope of the policy and make Admiral a guarantor of Global's performance of contracts. Therefore, the Court finds that an occurrence does not exist when Global is sued for damages because of its faulty or defective work unless the defective workmanship causes an unexpected happening.

Under that standard, an occurrence simply did not occur here. At the heart of the *Brandstorm* action is the claim that Global failed to meet its contractual obligation of pasteurizing the seeds in a manner that would meet certain specifications and standards. Global assured Brandstorm that it could effectively pasteurize the seeds, but its pasteurization process allegedly failed and caused damage to the seeds and bags. The Court cannot classify that damage as an accident because Global's defective workmanship caused the damage, and it was an inherent risk of performing the pasteurization process. Thus, it is the exact type of business risk that Global's CGL policy does not cover.

However, even if the damage to the seeds and bags could be classified as accidental, and therefore an occurrence, the policy excludes this type of damage from coverage under the care, custody, or control exclusion and the your work exclusions.

The care, custody, or control exclusion precludes coverage for property damage to "[p]ersonal property in the care, custody, or control of the insured." ECF 17-8 at 13–14. When construed in favor of Global, this exclusion requires Global to have exercised a possessory right

5

over the property that constitutes exclusive care, custody, or control. *See, e.g.*, *Connie's Const. Co., Inc. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975); *McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 247 Cal. Rptr. 3d 825, 833 (Cal. Ct. App. 2019); *Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, 196 So.3d 238, 246 (Ala. 2015).

Although Brandstorm does not explicitly allege that Global had an exclusive possessory right over the seeds and bags, neither the allegations in the complaint nor the evidence put forth by Global shows that there is a triable issue regarding its exclusive care, custody, or control over the property. Brandstorm hired Global to perform a pasteurization process on the seeds and alleges that Global's pasteurization process damaged the seeds and the bags in which they were contained. To perform the pasteurization process, Global would have needed to exercise a possessory right over the seeds and bags at some point that classifies as care, custody, or control. Otherwise, Global simply would not be liable for the damage to the seeds and bags because its pasteurization process would not have caused the damage. Further, the record does not support a reasonable inference that anyone directed Global what to do or that Global functioned as merely an instrumentality of some other actor. The only reasonable inference is that Global had an exclusive possessory right over the seeds and bags while it completed the pasteurization process. Thus, the Court finds that the damage to the seeds and bags arose from Global's actions while they were in its care, custody, and control and is not covered by Global's CGL policy.

The policy also excludes property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" and to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" ECF No. 17-8 at 14. As Brandstorm alleged, Global contracted to perform the pasteurization process to the seeds while they were in the bags and assured Brandstorm numerous times that the process would be effective. Thus, Global's liability in the *Brandstorm* action hinges on whether Global ineffectively performed the work it contracted to do and caused damage to the property it agreed to perform its work on. Regardless of when the alleged damage occurred, the your work exclusions eliminate coverage for the damage to the seeds and bags because the damage to the seeds and bags as alleged is directly attributable to Global's work. Global did not contract

with Admiral for coverage for that type of damage but rather excluded it by including the your work exclusions.

In conclusion, the Court finds that Admiral did not have a duty to defend Global in the *Brandstorm* action because there was not an occurrence and, even if there was, the policy excludes coverage for the property damage. Accordingly, the Court grants Admiral summary judgment on Global's breach of contract claim.

### C. Tortious Breach of Good Faith and Fair Dealing Claim

Admiral also claims that it is entitled to summary judgment on Global's breach of good faith and fair dealing claim because it did not have a duty to defend Global. The Court agrees. An insurance company must have acted in bad faith to find a violation of the good faith and fair dealing covenant. Bad faith involves "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). Because the Court concluded that Admiral did not have a duty to defend Global, there is no basis for concluding that Admiral acted in bad faith. Therefore, the Court grants summary judgment in favor of Admiral on the tortious breach of good faith and fair dealing claim.

### D. Nev. Rev. Stat. § 686A.310 Claims

Lastly, Admiral argues that it is entitled to summary judgment on Global's Nev. Rev. Stat. § 686A.310 claims. Admiral argues that Nev. Rev. Stat. § 686A.310 claims require that "the conduct of insurer both violated the statute and damaged the policyholder" and that its conduct did not damage Global if there is no coverage. The Court disagrees. Nev. Rev. Stat. § 686A.310 enumerates sixteen activities that constitute an unfair practice. Unless stated explicitly, the provisions do not necessarily involve the denial of a claim. *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1243 (D. Nev. 1994).

Upon review of Global's complaint, the Court finds that two of the alleged violations of Nev. Rev. Stat. § 686A.310 involve Admiral refusing to defend Global and liability under the CGL policy. Subsection (e) states that it is an unfair practice to "fail[] to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." Admiral could not have violated this provision because it did not have a duty to defend Global.

7

Thus, Admiral is entitled to summary judgment on the subsection (e) claim. Likewise, Admiral is entitled to summary judgment on the subsection (f) claim. Unfair practice claims under Subsection (f), which deal with the insured having to institute litigation to recover amounts due under an insurance policy, would require the insurer to be liable under the policy. Here, Admiral is not liable to Global under the CGL policy and thus could not have violated subsection (f). However, Global also alleged violations of subsections (b), (c), (d), and (n). ECF No. 1 at 11–12. Those subsections do not involve Admiral's liability under Global's CGL policy, and Admiral could have violated them in the absence of liability. Accordingly, the Court denies Admiral's motion for summary judgment on those claims.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that the Court grants Admiral summary judgment on Global's breach of contract, tortious breach of good faith and fair dealing, and Nev. Rev. Stat. § 686A.310(1)(e) and § 686A.310(1)(f) claims.

IT IS SO ORDERED.

DATED this 4th day of May, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE